OCTOBER AND NOVEMBER TERM, 1883, NO. 81.    OCTOBER 29, 1883.

# The Grand Lodge of the Ancient Order of United Workmen of Pennsylvania *vs.* Stepp *et al.*

Implied or express assent by a member of a corporation to an authority not within the scope of the charter does not confer such authority or estop such member from denying it.

Before MERCUR, C. J.; GORDON, PAXSON, STERRETT, GREEN, and CLARK, JJ. TRUNKEY, J., absent.

Error to the Court of Common Pleas No. 1 of *Allegheny County*.

*Mandamus* by J. G. Stepp, S. O. Kyle, V. Sheaffer, C. W. Hamilton, George Spratt, J. M. Logan, G. K. Cartwright, H. E. Foulk, and J. K. Posey, members of Corona Lodge, No. 23, Ancient Order of United Workmen of the State of Pennsylvania, in their own behalf and in behalf of the other members of said lodge, against the Grand Lodge of the Ancient Order of United Workmen of Pennsylvania, a corporation under the laws of said Commonwealth, W. H. James, Grand Master Workman, and J. M. McNair, Grand Recorder of said Grand Lodge, to compel the said Grand Lodge and its officers to restore

the Corona Lodge to all its rights and privileges guaranteed to it under its charter.

The facts, as they appeared from the petition for an alternative writ of mandamus and the answer thereto, were as follows: The Grand Lodge of the Ancient Order of United Workmen of Pennsylvania was incorporated on March 9, 1871. Its charter provided that it should have the power to institute "such subordinate lodges as it may see fit, under such rules, by-laws, and regulations as the corporation may establish, not in conflict with the laws of the Commonwealth." The fourth section of the charter was as follows:

"SECTION 4. It shall be lawful for the corporation to create, hold, and disburse a beneficiary fund for the relief of the members and their families, of the lodges established by this corporation, under such regulations as may be adopted by the corporation; provided, that such fund shall at no time exceed five thousand dollars."

The Corona Lodge was instituted by the Grand Lodge on August 6, 1872.

In 1873, representatives from the Grand Lodge of Pennsylvania, and other Grand Lodges throughout the country, met and organized a Supreme Lodge of the Order. The Supreme Lodge received a charter from the State of Kentucky, approved February 11, 1873. In March, 1882, a notice of an assessment of fifty cents per member was received by Corona Lodge from J. M. McNair, Grand Recorder of the Grand Lodge. This assessment was levied by the Supreme Lodge, and approved by the Grand Lodge of Pennsylvania, for the purpose of aiding the Grand Lodge A. O. U. W. of Indiana. The Corona Lodge refused to pay the assessment, and the beneficiary certificates of its members were, on May 4, 1882, suspended by the Grand Lodge. The relators set forth, *inter alia*, in their petition that they, as members of Corona Lodge, "received beneficiary certificates from said Grand Lodge entitling each of them to the sum of two thousand dollars, payable at death, to the person designated in said certificate; that each and every member of said Corona Lodge, at the time they applied for said beneficiary certificate, were required to pay to said Grand Lodge the sum of one dollar, and also to deposit the sum of one dollar with said subordinate lodge for the use of the beneficiary fund of said Grand Lodge, and at the same time to sign an application for said beneficiary certificate, which application and beneficiary certificate constituted a contract of insurance between said Grand Lodge and the members

[The Grand Lodge of the A. O. of U. W. of Penn'a *vs.* Stepp *et al.*]

of said Corona Lodge individually ; that, by the terms of said contract, upon the death of a member holding such a certificate, each member holding said beneficiary certificate issued by said Grand Lodge, was required to pay an assessment of one dollar within the time prescribed by the laws of said Grand Lodge, of which death due notice was required to be given to each lodge by the Grand Recorder ;" that they declined to pay the assessment in aid of the Grand Lodge of Indiana, on the ground that it was without authority of law and in violation of the terms of the contract above referred to ; that they had, in consequence, been unlawfully suspended from their privileges under the said beneficial certificates, and they prayed to be restored and re-instated to all their rights in the same.

The respondents' answer and return set forth, *inter alia*, that the Grand Lodge of Pennsylvania has "full control and authority over all the subordinate lodges of the A. O. U. W. of Pennsylvania, (subject to appeal to the Supreme Lodge,) and adopted for the same a uniform constitution and code of laws, which it has altered and revised from time to time ; . . . that all members of the order who joined it since February, 1873, did so upon express agreement that they would hold their beneficiary certificates subject to such laws as said Grand Lodge had made, or such as it might hereafter adopt, and that each of said relators did join the order since February, 1873 ; . . . that the charter of said Grand Lodge did not confine the operations of said lodge to the State of Pennsylvania, but lodges were established and the beneficiary fund collected from and disbursed to persons entitled thereto under the said beneficiary article in other States, as well as Pennsylvania, until a mutual agreement was entered into between the Grand Lodge of Pennsylvania and the Grand Lodges of other States to delegate general powers for that purpose to a Supreme Lodge ; that said Supreme Lodge was organized by representatives from the Grand. Lodge of Pennsylvania and other Grand Lodges of the order on February 11, 1873 ; that said representatives were duly elected by said Grand Lodges and instructed to organize said Supreme Lodge, and that the representative of Corona Lodge was present and acted with the Grand Lodge of Pennsylvania in electing said representatives and instructing them to organize said Supreme Lodge ; that said Supreme Lodge was organized under a charter from the State of Kentucky, approved February 11, 1873 ; that among other powers delegated to it was the right and obligation to collect, hold, and dis-

[The Grand Lodge of the A. O. of U. W. of Penn'a *vs.* Stepp *et al.*]

burse the beneficiary fund of the order, in all States where there were less than two thousand members, States having over two thousand members to have the right to collect, hold, and disburse the said fund under the local jurisdiction of their Grand Lodges ; that at the time said Supreme Lodge was established, Pennsylvania did not have two thousand members, and said Supreme Lodge did collect, hold, and disburse its beneficiary fund until July, 1874, when Pennsylvania, having obtained over two thousand members, was set aside by said Supreme Lodge as a separate beneficiary jurisdiction and entitled to manage its own beneficiary fund ; that since the organization of said Supreme Lodge, it has been recognized by this Grand Lodge and its subordinate lodges as the supreme head of the order, and the beneficiary regulations of the Grand Lodge are the same as approved by said Supreme Lodge, representatives have been annually sent to said Supreme Lodge, *per capita* tax paid to it, and the secret and ritualistic work of this Grand Lodge and its subordinate lodges have been received from it, all contracts made by this Grand Lodge guaranteed by said Supreme Lodge, and this Grand Lodge and its subordinate lodges have complied with every regulation and availed themselves of every privilege afforded by said Supreme Lodge ; that the establishment of said Supreme Lodge was not only a reasonable, but a necessary, measure for the protection of the members of the lodges established by this Grand Lodge and for the promotion and security of the objects for which it was incorporated ; that the delegation of said powers to said Supreme Lodge was for a valid consideration, and secured important rights and benefits ; that the Grand Lodge, at its annual session, January 8, 1878, regularly adopted the following amendment to its Constitution, viz :

" 'Art. 12, Sec. 1.    All laws of general application to the order adopted by the Supreme Lodge are recognized as of binding force upon the Grand Lodge and the subordinate lodges under its jurisdiction.'

" That Corona Lodge was represented at said session and participated in the adoption of said amendment ; that, at its annual session in January, 1880, the Grand Lodge of Pennsylvania, recognizing the necessity of protecting the lodges established by it, formulated and unanimously recommended the adoption of a general relief law, the purposes of which are set forth as follows :

" ' Sec. 1.    To protect such beneficiary jurisdiction of the order from exigencies which may arise, increasing its

[The Grand Lodge of the A. O. of U. W. of Penn'a vs. Stepp et al.]

death rate to an extent which would make assessments for a time oppressive upon its membership or beyond their ability to pay ; to strengthen and sustain the order and enable it to meet every emergency, by giving the assistance of the whole to any part suffering from an epidemic or other calamity, relief assessments shall be raised, disbursed, and managed as provided for in this article.'

"That the representative of Corona Lodge was present and united in recommending said relief law, and the said Supreme Lodge, at its annual session the same year, adopted the said relief law as recommended, and made it of general application to the whole order ; that the adoption of said relief law by the Supreme Lodge was reported to said Grand Lodge by its representatives, and the said report received and adopted, and said relief law is recognized as of binding force by all the subordinate lodges; that all such subordinate lodges promptly paid the first assessment made thereunder, including Corona Lodge, and all but said Corona Lodge promptly paid this relief call No. 2."

The relators demurred to the answer on the ground that the matters of fact therein alleged, by way of defense, were insufficient in law to defeat their right to a peremptory writ of mandamus.

After argument, the Court, March 10, 1883, sustained the demurrer and entered judgment thereon, STOWE, P. J., filing the following opinion :

"The question in this case depends upon the legality of the demand upon Corona Lodge to pay the amount assessed upon it by the Supreme Lodge of the Order, for the purpose of relieving the Grand Lodge of the State of Indiana—a corporation organized under a charter granted by the State of Kentucky, February 11, 1873. It is clear that under the charter of the Grand Lodge of Pennsylvania, no such power is granted as that claimed by respondent, as section three of its charter provides that 'it shall be lawful for the corporation to create, hold, and disburse a beneficiary fund, for the relief of the members and their families of the lodges established by this corporation,' etc. But it is said that the Grand Lodge of Pennsylvania, composed of duly elected representatives of the subordinate lodges under its jurisdiction, and the duly elected officers of said Grand Lodge, and also a duly elected representative of Corona Lodge, who was present and acting with said representatives, assembled in said Grand Lodge, organized a Supreme Lodge of the Order

in July, 1873, which has ever since been recognized by the Grand Lodge of Pennsylvania and its subordinate lodges as the duly constituted supreme head of the Order, and that the constitution, by-laws, and beneficiary regulations of the Grand Lodge and of the subordinate lodges under its jurisdiction, as they exist to-day, with all revisals, alterations, amendments, and additions, are the same as approved by the Supreme Lodge, and that the Grand Lodge of Pennsylvania has annually sent representatives to said Supreme Lodge, elected by the subordinate lodges, including Corona Lodge, &c. There seems to be no doubt that Corona Lodge impliedly, at least, if not expressly, from the time of the organization of the Supreme Lodge, in 1873, till this difficulty arose, recognized the authority of the Supreme Lodge as now claimed and sought to be enforced against it. If, then, their assent to such authority could confer it, or estop them now from denying it, the relief claimed in this proceeding should be denied. But it seems to me that such a position is not maintainable. The Supreme Court of the United States, following a judgment of the House of Lords, of England, has recently declared that the broad doctrine is now established, that a contract not within the scope of the powers conferred on a corporation cannot be made valid by the consent of every one of the shareholders. Nor can it by any partial performance become the foundation of a right of action. Thomas *v.* West Jersey R. R. Co., 101 U. S., 71. It is said in that case this doctrine is so manifestly supported by sound reason and the highest consideration of policy, that it must hereafter be accepted universally as expressing the true rule of judgment in such cases. The same principle is announced in several other cases cited by plaintiffs—see Salem Mill Dam Co. *v.* Ropes, 6 Pickering, 23 ; Colman *v.* Eastern Counties Railway Co., 16 Law, J. N. S., Equity, 73 and 19 *Idem*, 225, and the Supreme Court of Michigan in Lamphere *v.* The Grand Lodge A. O. U. W., 47 Mich. Rep., 429, seems to have ruled the very question now before us in a similar case. The Court there saying : ' He, the plaintiff, stands suspended by the respondent, and thereby loses his insurance for refusing to recognize the orders of the Supreme Lodge, which is a corporation existing under the laws of Kentucky, and not subject to this jurisdiction. The assessment was made to pay losses on risks taken by the Order in other States and by other State Grand Lodges. The respondent is a Michigan corporation, existing under chapter ninety-four of the compiled laws. The

[The Grand Lodge of the A. O. of U. W. of Penn'a vs. Stepp *et al.*]

relator is not liable to pay it. It is not competent for the respondent to subject itself or its members to a foreign authority in this way.' I am of the opinion, therefore, that as the charter of respondent in this case confers no such authority, none exists. The plaintiffs were under no obligations to obey the order of the Supreme Lodge, even though recognized and indorsed by the respondent, that the suspension of Corona Lodge was illegal, and that the prayer of the plaintiffs must be granted and the *mandamus* awarded as prayed for, with costs."

The respondents thereupon took this writ, assigning for errors that the petition was informal, that the rights of relators were several and not joint, and that the Court erred in its rulings.

*A. M. Brown, W. H. James,* and *J. M. Caldwell* for plaintiff in error.

The disputed assessment is not *ultra vires,* because its object is to afford relief generally to all the members of the Order in all States where lodges of the Order have been established, but it is in strict accord with the intention of the framers of the charter, and within the scope of the powers conferred by it.

Lamphere *v.* the Grand Lodge, A. O. U. W., of Michigan, upon which the Court below decided this case is not in point.

This corporation should be classed with churches and benevolent associations, and not be subjected to rigid restrictions.

The by-laws have the same force as if specifically granted by the Legislature.

Thomas *v.* R. R. Co., 101 U. S. Rep., 71 ; Salem Mill Dam Co. *v.* Ropes, 6 Pick., 23 ; Colman *v.* Railway, 16 Law Jour. (N. S.) Eq., 73.

The by-laws derive their force from assent.

Black and White-Smiths Society *v.* Vandyke, 2 Wharton, 312 ; Toram *v.* Asso., 4 Barr, 519 ; Engine Co. *v.* Harrison, 12 Norris, 264.

*R. F. Wilson* and *J. McF. Carpenter* for defendants in error.

A corporation has no powers except those expressly granted by its charter, or such as arise by necessary implication. In this case, an inspection of the application made for the beneficiary certificate, and the certificate itself, as well as the beneficiary article in the constitution of said Grand Lodge, shows that the payment of

[Hays *v.* Baltimore & Ohio R. R. Co.]

the fixed sum of one dollar on each assessment, made to pay death losses occurring within the State of Pennsylvania, was all that was contemplated by either party when the certificates were issued; and this was in strict harmony with the provisions of the charter.

The attempt is now made on the part of the Grand Lodge, at the dictation of the Supreme Lodge, to compel the payment of an additional premium or sum of money to that provided for in the original contract, and this, too, for the benefit of an entire stranger to the contract.

That the Grand Lodge has not power summarily to cut off, without trial, those who refuse to pay this extra assessment, given to it expressly, or by necessary implication, we think is scarcely doubtful.

Lamphere *v.* Grand Lodge, A. O. U. W., of Michigan, 47 Mich., 429; Thomas *v.* West Jersey R. R., 101 U. S., 71; Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons Eq. Cases, 180; Perrine *v.* Canal Co., 9 Howard, 172; Head *v.* Insurance Co., 2 Cranch, 127; Colman *v.* Railway Co., 16 L. J. (N. S.) Eq., 73; Phillips *v.* Allen, 5 Wr., 482; Diligent Fire Co. *v.* Commonwealth, 25 P. F. Smith, 295; Commonwealth *v.* Erie and N. E. Railway Co., 27 Penna. State, 339.

November 12th, 1883.—Per Curiam: This judgment is affirmed on the clear and satisfactory opinion of the Court below.

Judgment affirmed.